**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **REBBECCA L. REED,** | § |
| | § |
| **Plaintiff** | § |
| | § |
| -v- | § |
| | § |
| **KEY 2 RECOVERY, INC.** | § |
| | § |
| **Defendant.** | § |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff Rebbecca L. Reed (née Fraley, hereafter Reed) brings this action to secure redress from unlawful collection practices engaged in by defendant Key 2 Recovery Inc. Plaintiff alleges violation of the Fair Debt Collection Practices Act 15 U.S.C. §1692 *et seq.* ("FDCPA"), the Telephone Collection Practices Act 47 U.S.C. §227 *et. seq.* ("TCPA"), and the Michigan Occupational Code M.C.L. §339.901 *et. seq.* ("MOC").

### II. VENUE AND JURISDICTION

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1692k(d), which states that such actions may be brought and heard before "any appropriate United States District Court without regard to the amount in controversy," 47 U.S.C. §227(b)(3) and 28 U.S.C. §1331.

3. Venue is proper pursuant to 28 U.S.C. §1319(b)(2) as the acts giving rise to Plaintiff's cause of action occurred in this district, Plaintiff resides in this district, and the Defendant transacts and conducts business in this district.

### III. PARTIES

4. Plaintiff Rebbecca L. Reed is a natural person residing in Clinton County, Michigan. Mrs. Reed is a "consumer" and "person" as the terms are defined and used in the FDCPA and TCPA. Mrs. Reed is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

5. Defendant Key 2 Recovery Inc. (K2R) is an Ohio corporation purportedly with offices located at 8894 Beckett Rd., West Chester Township, Ohio 45069. The

registered agent for K2R is The Corporation Company, 40600 Ann Arbor Rd E. Ste. 201, Plymouth, MI 48170.

6. K2R uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. K2R regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

7. K2R is a "debt collector" as the term is defined and used in the FDCPA and the TCPA. Key 2 Recovery is licensed (No. 2401002447) by the State of Michigan to collect consumer debts in Michigan. K2R is a "collection agency" and "licensee" as those terms are defined and used in the MOC.

8. At all relevant times to this complaint, K2R has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. §153(14) that originated, routed, and/or terminated telecommunications.

9. At all relevant times to this complaint, K2R engaged in "telecommunications" as defined in the TCPA 47 U.S.C. §153(43).

10. At all relevant times to this complaint, K2R engaged in "Interstate communications" as defined by TCPA 47 U.S.C. §153(22).

11. At all relevant times to this complaint, K2R has used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. §153(52), that existed as instrumentalities of interstate and intrastate commerce.

12. At all relevant times to this complaint, K2R has used, controlled, and/or operated "automatic dialing systems" as defined by the TCPA 47 U.S.C. §227(a)(1) and 47 C.F.R. 64.1200(f)(1).

## IV. FACTUAL ALLEGATIONS

13. Mrs. Reed attended classes at Lansing Community College (LCC) from approximately Fall of 2009 until Spring of 2010 and incurred payment obligations arising out of her attendance which was done for personal, family and household purposes.

14. Mrs. Reed disputes owing any debt to Lansing Community College. Defendants allege that she owes a debt that went into default for late payment and is therefore an alleged "debt" as that term is defined by 15 U.S.C. §1692a(5).

15. On October 16, 2015, Mrs. Reed filed an order for relief under chapter seven of the United States Bankruptcy Code (Case No. 15-05708). On December 18, 2015,

Trustee Scott A. Chernich issued a Report of no distribution in Mrs. Reed's case, certifying that there were no funds available to be distributed to her creditors.

16. On March 17, 2016, Mrs. Reed received a discharge of her indebtedness from the United States Bankruptcy Court.

17. Sometime in or around July 2016, the Mrs. Reed's alleged debt was consigned, placed, or otherwise transferred to Defendant for collection from Mrs. Reed.

18. In August of 2016, Mrs. Reed began receiving phone calls and voice messages from K2R asserting that she owed a debt to Lansing Community College, and asking her to contact them.

19. K2R made multiple phone calls, approximately one per day, from August 1, 2016 until September 12, 2016. Mrs. Reed did not respond to the calls initially as she did not believe she owed any debt.

### *Interfering with Plaintiff's Employment*

20. On September 13, 2016, a representative from K2R contacted Mrs. Reed's employer and spoke with an employee named Ashley. The caller stated that they were calling from K2R and were attempting to collect a debt. They requested that Mrs. Reed call them back. The employee who received the call then informed Mrs. Reed's manager.

21. On September 14. 2016, at approximately 9:00 a.m., Mrs. Reed's manager pulled her aside into an empty conference room. He informed her that she had received a call from K2R, and stated that she was not allowed to receive personal phone calls at work, especially not from bill collectors. He excoriated Mrs. Reed because he believed she had given the office phone number to a bill collector. He then instructed Mrs. Reed to take care of the situation on her own time, and warned her that if K2R called again, further action would be taken, and she would be written up for the incident. Mrs. Reed was mortified that her employer had been called and that K2R had interfered with her employment.

22. After being dressed down by her employer, Mrs. Reed attempted to work but found herself unable to do so because of the stress and embarrassment caused by the defendant's phone call.

23. On her lunch hour at approximately 11:48 a.m. Mrs. Reed called K2R and spoke with a person who identified herself as Wilma Hamm. The following statements were made during their sixteen minute conversation:

    a. Mrs. Reed told Ms. Hamm that she did not believe she owed the debt. Ms. Hamm stated that there is no way to dispute the debt that she owed the debt, and that she was just trying to get out of paying the debt.

    b. Ms. Hamm stated that Mrs. Reed had twenty-four (24) hours to make a payment or K2R would begin to garnishment proceedings.

    c. Mrs. Reed asked if she could request documentation of the debt, she was told that K2R could send her documentation but it would not help her, would not stop wage garnishment, and would be a waste of her time.

    d. Mrs. Reed informed Ms. Hamm that she had filed for bankruptcy and asked her to contact her attorney. Ms. Hamm refused to contact her attorney, would not even accept the attorney's contact information, and stated that there was nothing that an attorney could do for her.

    e. Ms. Hamm stated that the debt owed to LCC could not be discharged in a bankruptcy because LCC was a not for profit institution.

    f. Mrs. Reed explained she could not pay her and only had thirty dollars that she needed to use for fuel. Ms. Hamm stated that if she did not make a payment K2R would get a judgment and garnish the whole amount of the debt owed at one time.

    g. Before terminating the phone call Mrs. Reed requested that K2R not contact her employer again.

24. Mrs. Reed suffers from a host of medical conditions including but not limited to depression, anxiety disorder, colitis, and irritable bowel syndrome.

25. On a normal day, Mrs. Reed's conditions cause her to use the bathroom two to three times during work hours. In times of stress Mrs. Reed's conditions are aggravated and she has painful diarrhea and stomach cramping.

26. Due to the stress and anxiety caused by K2R Mrs. Reed found herself needing to use the bathroom approximately six to ten times that day and was in incredible pain during work hours. Mrs. Reed was also emotionally distraught and on the verge of tears for the rest of the day.

27. Over the course of the next month Mrs. Reed continued to suffer from painful diarrhea and cramping due to stress, and was using the restroom approximately six to ten times per day.

28. Mrs. Reed's frequent bathroom usage interfered with her ability to do her job and was noticed by other employees and her employer.

29. Shortly after the phone call from K2R to her employer, Mrs. Reed overheard her manager tell a fellow employee that Mrs. Reed was very unprofessional, and that he could not believe she gave the office phone number to a debt collector.

30. As office gossip spread about a bill collector calling for Mrs. Reed, her co-workers began to make comments and jokes at her expense that she must need a second job and was unable to pay her bills.

31. Mrs. Reed had previously been working approximately forty hours per week, but soon thereafter noticed that her work hours were being reduced little by little until she had to find a new job because she could not earn enough to support her family.

### *Marital Problems Cause by Defendant's Conduct*

32. On September 14, the same day that she had spoken with Ms. Hamm, Mrs. Reed discussed the debt with her husband in the evening.

33. Mrs. Reed's husband became irate when he learned that she had debt collectors calling her. He began to scream at Mrs. Reed that he could not believe she still had debts after bankruptcy and accused her of not paying their marital bills.

34. Throughout her husband's emotional outburst Mrs. Reed was in tears and was left shaken when her husband stated that "You'd better fix this shit because I'm tired of never having money. I can't believe you can't keep track of your finances."

35. This interaction exacerbated Mrs. Reed's medical conditions and sent her into a state of intense depression and anxiety. Mrs. Reed experienced feelings of worthlessness, guilt, and fear that her husband would divorce her.

36. Mrs. Reed attempted to sleep but was unable to do so because of the intense feelings of fear and anxiety. Mrs. Reed did eventually fall asleep but woke up choking and gasping for air. She also vomited twice that evening and experienced intense pain and nausea due to stress caused by Defendant's conduct.

37. On September 15, 2016, Mrs. Reed contacted K2R to set up a repayment plan because she believed the threat that her wages could be garnished immediately. During that phone call she spoke to a manager and the following statements were made:

    a. Mrs. Reed would need to pay $189.00 by the end of September, or make arrangements with a bank account or debit cards to stop a wage garnishment from going into effect.

    b. Mrs. Reed explained that she did not have the means to make payment, the manager than stated she should borrow from a co-worker.

    c. The manager then stated that if Mrs. Reed did not either borrow the money or pay what she had, that she would be garnished. The manager also stated that "this isn't my fault, you did this to yourself."

    d. Mrs. Reed was told that she had been given too much time already, and that she had three hours to pay them or she would be garnished.

    e. Mrs. Reed then reluctantly agreed to pay the last thirty dollars she had to her name, and agreed to set up recurring payments.

    f. Mrs. Reed was then told that if she did not have the correct amount of money in her bank account or missed a payment, that they would begin garnishing her wages immediately.

38. After paying her last thirty dollars, Mrs. Reed feared telling her husband that she had made payments.

39. Because she had given all the money she had to Defendant, Mrs. Reed had no money to purchase fuel and had to borrow money from her mother-in-law just to be able to drive home.

40. For the next week Mrs. Reed's medical conditions made even the most mundane daily tasks unbearable. For the rest of the week Mrs. Reed suffered in the following ways:

    a. She was constantly exhausted but could not fall asleep for hours due to stress.

    b. When Mrs. Reed did fall asleep she would wake up at least once choking and gasping for air, which would then cause her to vomit.

    c. Mrs. Reed had nausea to the point that she could not keep down food or liquid, every time she ate or drank she would become ill and either vomit or have diarrhea.

    d. Mrs. Reed had to use the restroom between six to ten times per day.

  e. Her inability to consume sustenance combined with diarrhea left her in a physically and emotionally weak and fragile state.

  f. Mrs. Reed had constant intestinal discomfort and cramping.

  g. Mrs. Reed experienced feelings of worthlessness, despair, fear, and hopelessness.

41. Because Mrs. Reed's physical symptoms were making daily life unbearable, she met with her treating physician in order to discuss increasing her medications.

42. Mrs. Reed's physician instructed her that she must avoid stress or her symptoms would continue to worsen.

43. On September 27, 2016, Mrs. Reed made an additional payment of $53.04 to K2R.

44. After September 27, 2016, Mrs. Reed ceased making payments to K2R because she could not afford to do so.

45. Defendant then sent multiple letters to Mrs. Reed's home attempting to collect the alleged debt. Each letter would aggravate Mr. Reed and cause even greater discord between Mr. and Mrs. Reed.

46. After Mrs. Reed stopped making the payments, K2R began barraging her cellular telephone with numerous calls. Mrs. Reed received between three to five calls per day from K2R between October of 2016 and November 8 of 2016.

47. Defendant also made excessive amounts of calls to Mrs. Reed's husband cellular telephone between October of 2016 and November 8 of 2016.

48. Defendant left several voicemails on Mr. Reed's phone stating that Mrs. Reed owed a debt and she needed to contact them. The constant harassment by K2R exacerbated marital problems between Mr. & Mrs. Reed.

49. On November 7, 2016, Defendant called the cellular telephone of Mrs. Reed's father-in-law, Richard Reed (Richard). On that phone call, the following statements were made:

  a. The representative inquired if Mrs. Reed lived with Richard, and he responded that she did not.

  b. The representative then stated that Mrs. Reed owed them a debt and asked if Richard knew her.

    c. Richard then stated that the caller had the wrong number and terminated the phone call.

50. Shortly after terminating the phone call, Richard then contacted his son, Mrs. Reed's husband, and informed him that he was receiving calls from Mrs. Reed's creditors.

51. Mr. Reed then called Mrs. Reed and lambasted her for what he believed to be her lack of responsibility, and for giving out his father's phone number to debt collectors.

### *Prohibited Communications with Third Parties*

52. A debt collector may not communicate in connection with the collection of a debt with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. §1692; 15 U.S.C. §1692c(b).

53. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. §1692a(7).

54. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. §1692b(2).

55. K2R did not obtain the prior consent of Mrs. Reed to communicate with her employer or her father-in-law.

56. K2R did not obtain the prior consent of Mrs. Reed to communicate to her employer or her father-in-law, that K2R was attempting to collect a debt from Mrs. Reed.

57. Mrs. Reed has never given K2R permission to speak with her employer or her father-in-law regarding the alleged debt.

58. K2R disclosed to Mrs. Reed's employer and her father-in-law that she owed a debt in violation of the FDCPA.

### *Prohibited Communications with Mrs. Reed*

59. A debt collector may not communicate in connection with the collection of a debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge or can readily ascertain such attorney's name and address. 15 U.S.C. §1692c(a)(2).

60. The alleged debt was incurred prior to the filing of Mrs. Reed's bankruptcy petition.

61. Mrs. Reed informed Defendant numerous times that she was represented by an attorney and attempted to give them his name and address.

62. K2R could have chosen to contact Mrs. Reed's attorney which would have likely resolved this matter but chose not to.

63. K2R's continued communications with Mrs. Reed after being made aware of her representation is a violation of the FDCPA.

*Harassment of Mr. and Mrs. Reed*

64. A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt such as causing a telephone to ring or engaging repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. §1692d(5).

65. K2R's obnoxious and incessant calls made to Mr. Reed's cellular telephone were made with the intent to harass, abuse, and annoy, and were a violation of the FDCPA.

66. K2R's obnoxious and incessant calls made to Mrs. Reed's cellular telephone were made with the intent to harass, abuse, and annoy, and were a violation of the FDCPA.

*Defendant's False & Misleading Representations*

67. A debt collector may not falsely represent the character, amount, or legal status of any debt. 15 U.S.C. §1692e(2)(A).

68. Defendant's representation that the alleged debt was a qualified student loan and therefore not dischargeable under the bankruptcy code was false and in violation of the FDCPA.

69. A debt collector may not represent that nonpayment of any debt will result in garnishment or seizure of wages of any person unless such action is lawful and the debt collector intends to take such action. 15 U.S.C. §1692e(2)(A).

70. Defendant is not a law firm, does not employ attorneys, and is not allowed to practice law in the State of Michigan.

71. Prior to garnishing Mrs. Reed's wages or property Defendant would be required to sue Mrs. Reed and obtain a judgment against her, only then could a writ of garnishment be obtained.

9

72. Defendant's repeated assertions that they would garnish Mrs. Reed's wages immediately were violations of the FDCPA as they did not intend to nor could they do so at that time.

73. It is unlawful for a debt collector to communicate to any person credit information that it knows or should know to be false including the failure to communicate that a disputed debt is disputed. 15 U.S.C. §1692e(8).

74. The FDCPA does not require that the consumer dispute the debt in writing in order to invoke the protections of 15 U.S.C. §1692e(8).

75. Defendant's statements that Mrs. Reed could not dispute the debt were false and were a violation of the FDCPA.

76. Defendant's failure to communicate to the original creditor that the debt was disputed was a violation of the FDCPA.

*Defendant's Unlawful Use of an Automatic Telephone Dialing System*

77. In connection with its attempts to collect the alleged debt, Defendant placed telephone calls to phone number ▮▮▮▮▮▮▮▮▮▮ Plaintiff's cellular telephone number; ▮▮▮▮▮▮▮▮▮▮ Plaintiff's Husband's cellular telephone number; and ▮▮▮▮▮▮▮▮▮▮ Plaintiff's Father-in-law's telephone number.

78. These calls were placed for non-emergency purposes.

79. Upon information and good faith belief, and in light of the frequency, number, nature, and character of these calls, Defendant placed them by using an automatic telephone dialing system.

80. Defendant never had the actual or implied consent of Plaintiff, Plaintiff's husband, or Plaintiff's Father-in-law to use an automatic telephone dialing system to call any of their cellular telephones.

81. Defendant knew or should have known that continued calls to Plaintiff, Plaintiff's husband, of Plaintiff's Father-in-law would be harassing.

82. Defendant continued to use an automatic telephone dialing system to call Plaintiff, Plaintiff's husband, and Plaintiff's Father-in-law.

83. Since August 1, 2016, Defendant has placed at least fifty (50) calls to Plaintiff, Plaintiff's husband, and Plaintiff's Father-in-law.

84. Plaintiff, Plaintiff's husband, and Plaintiff's Father-in-law feel annoyed and harassed by Defendant's calls to their cellular telephones.

85. Defendant placed these calls voluntarily.

86. Defendant placed these calls under its own free will.

87. Defendant had knowledge that it was using an automatic telephone dialing system to place these calls.

88. Defendant intended to use an automatic telephone dialing system to place these calls.

89. The natural consequence of Defendant's calls to the cellular telephones of Plaintiff, Plaintiff's husband, and Plaintiff's father-in-law was harassing.

90. Defendant intended to harass Plaintiff by continuing to call the cellular telephones belonging to Plaintiff, Plaintiff's husband, and Plaintiff's father-in-law

*****

91. The acts and omissions of K2R and its employees done in connection with efforts to collect a debt from Mrs. Reed were done intentionally and willfully.

92. K2R and its employees intentionally and willfully violated the FDCPA, TCPA, and MOC.

93. As an actual and proximate result of the acts and omissions of defendant and its employees, Plaintiff has suffered actual damages and injury for which she should be compensated in an amount to be established by jury and at trial, including but not limited to:

    a. Exacerbation of Plaintiff's colitis and irritable bowel syndrome resulting in physical manifestations including but not limited to chronic and persistent nausea, vomiting, insomnia, intestinal distress, dehydration, malnourishment.

    b. Exacerbation of Plaintiff's depression, anxiety disorder, and post-traumatic stress disorder resulting in feelings of worthlessness, guilt, fear, embarrassment, anxiety, stress, hopelessness and suffering.

    c. Economic damages from loss of income and employment opportunities.

## V.  TRIAL BY JURY

94. Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed. R. Civ. Pro. 38.

## VI. PRAYER FOR RELIEF

**Count I – Fair Debt Collection Practices Act**

95. Plaintiff incorporates the foregoing paragraphs by reference.

96. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include but are not limited to the following:

    a.  Defendant violated 15 U.S.C. §1692b;

    b.  Defendant violated 15 U.S.C. §1692c;

    c.  Defendant violated 15 U.S.C. §1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    d.  Defendant violated 15 U.S.C. §1692e by using false and misleading representations or means in connection with the collection of a debt; and

    e.  Defendant violated 15 U.S.C. §1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Plaintiff.

**Wherefore,** Plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

   b) Statutory damages pursuant to 15 U.S.C. §1692l(a)(2)(A);

   c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3); and

   d) Such further relief as the court deems just and equitable.

**Count II – Michigan Occupational Code**

97. Plaintiff incorporates the foregoing paragraphs by reference.

98. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not limited to the following:

   a. Defendant violated M.C.L. §339.915(m) by bringing a public notice that the consumer is a debtor;

   b. Defendant violated M.C.L. §339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

   c. Defendant violated M.C.L. §339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

   d. Defendant violated M.C.L. §339.919.

**Wherefore**, Plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to M.C.L. §339.916(2);

   b) Treble the actual damages pursuant to M.C.L. §339.916(2);

   c) Statutory damages pursuant to M.C.L. §339.916(2);

   d) Reasonable attorney's fees and court costs pursuant to M.C.L. §339.916(2); and

   e) Equitable relief pursuant to M.C.L. §339.916(2).

**Count III – Telephone Collection Practices Act**

99. Plaintiff incorporates the foregoing paragraphs by reference.

100. Defendant has violated 47 U.S.C. §227(b)(1)(A)(iii) and 47 C.F.R. §64.1200 (a)(1)(iii) by using an automatic dialing system to make numerous calls to the cellular telephones of Plaintiff, Plaintiff's Husband, and Plaintiff's Father-in-law without consent.

101. Defendant's actions alleged herein constitute numerous negligent violations of the TCPA, entitling Plaintiff to an award of $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. §227(b)(3)(B).

102. Defendant's actions alleged herein constitute numerous knowing and/or willful

      violations of the TCPA, entitling Plaintiff to an award of $1,500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. §§227(b)(3)(B) and 227(b)(3)(C).

**Wherefore,** Plaintiff seeks judgment against Defendant for:

a) Statutory damages of $500.00 per call pursuant to 47 U.S.C. §227(b)(3)(B);

b) Treble damages of $1,500.00 per call pursuant to 47 U.S.C. §§227(b)(3)(B) and 227(b)(3)(C);

c) An injunction prohibiting Defendant from contacting Plaintiff on her cellular phone using an automated dialing system pursuant to 47 U.S.C. §§227(b)(3)(a).

| Dated: November 20, 2016 | Respectfully submitted:<br><br>__/s/_____<br>Jeffrey D. Mapes (P70509)<br>Jeffrey D. Mapes PLC<br>Attorneys for Plaintiff<br>29 Pearl St. NW, Ste. 305<br>Grand Rapids, MI 49503<br>Tel: (616) 719-3847<br>Fax: (616) 719-3857<br>jeff@mapesdebt.com |
|---|---|